No. 21-55608

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

JAMES MILLER; PATRICK RUSS; WENDY HAUFFEN; NEIL RUTHERFORD; ADRIAN SEVILLA; RYAN PETERSON; GUNFIGHTER TACTICAL, LLC; JOHN PHILLIPS; PWGG, L.P.; SAN DIEGO COUNTY GUN OWNERS PAC; CALIFORNIA GUN RIGHTS FOUNDATION; SECOND AMENDMENT FOUNDATION; AND FIREARMS POLICY COALITION, INC.,
*Plaintiffs-Appellees*,

v.

CALIFORNIA ATTORNEY GENERAL ROB BONTA; AND DOJ BUREAU OF FIREARMS DIRECTOR LUIS LOPEZ,
*Defendants-Appellants.*
_____

**On Appeal from the United States District Court
for the Southern District of California**
No. 19-cv-1537-BEN-JLB
The Honorable Roger T. Benitez, Judge
_____

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## TO STAY JUDGMENT PENDING APPEAL

## RELIEF REQUESTED BY JUNE 18, 2021
_____

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorneys General

JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3479
  Fax: (415) 703-1234
  Email: John.Echeverria@doj.ca.gov
*Attorneys for Defendants-Appellants*

June 10, 2021

## CIRCUIT RULE 27-3 CERTIFICATE

Defendants-Appellants Rob Bonta, in his official capacity as the Attorney General of the State of California, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms, hereby move this Court, on an emergency basis, for an order staying the district court's final judgment pending appeal. *See* Fed. R. App. P. 8(a)(2); 9th Cir. R. 27-3.[1] The district court entered its final judgment and issued its decision on June 4, 2021; copies are attached as Exhibits 1 and 2 to the accompanying declaration of John D. Echeverria.

Following an expedited non-jury trial on the merits, which the district court consolidated with Plaintiffs' motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a)(2), the district court enjoined the continued enforcement of certain provisions of California's Assault Weapons Control Act (the AWCA) that regulate firearms defined as "assault weapons" under California Penal Code section 30515(a). The AWCA was originally enacted over 30 years ago, in the wake of a mass shooting in a school yard in Stockton in 1989, in which the shooter used an AK-47 and large-capacity magazines to kill five children. The

---

[1] Rob Bonta has succeeded Xavier Becerra as the Attorney General of the State of California, and Luis Lopez has succeeded Brent E. Orick as the Director of the Bureau of Firearms. Under Federal Rule of Appellate Procedure 43(c)(2), Attorney General Bonta and Director Lopez, in their official capacities, are substituted as the defendants in this case.

statutory provisions enjoined by the district court have been in place for more than two decades. If the district court's judgment goes into effect while this case is on appeal, it would enable the immediate sale, possession, and manufacture in California of particularly dangerous weapons—firearms containing combat-oriented features that enhance the potential for deadly mass shootings and other forms of gun violence. A stay is needed to preserve the status quo and protect the public until this Court can rule on the merits.

In striking down the longstanding statutory provisions of the AWCA, the district court departed from the consensus view of the five federal circuit courts that have examined similar assault-weapon restrictions since *District of Columbia v. Heller*, 554 U.S. 570 (2008), and have rejected Second Amendment challenges to them. Each of the factors this Court considers in evaluating a motion for a stay pending appeal weighs in favor of granting this motion. Defendants are likely to succeed on the merits. And unless this Court issues a stay pending appeal within the 30-day period afforded by the district court, the status quo could be irrevocably altered by the influx of new assault weapons—weapons that could be difficult to remove from the State if this Court ultimately upholds the AWCA.

The district court's injunction is currently set to go into effect on July 4, 2021. If this Court is not able to rule on this motion before that date, Defendants respectfully request that it grant an administrative stay to preserve the status quo while it considers the motion. In the event that a three-judge panel denies this

motion, Defendants respectfully request that the panel grant an administrative stay to preserve the status quo until such time as Defendants have had an opportunity to seek further relief from the en banc Court or the Supreme Court.

The undersigned counsel certifies the following the information, as required by Ninth Circuit Rule 27-3(c).

**(1)  Names, Telephone Numbers, E-Mail Addresses, and Office Addresses for the Attorneys for All Parties (9th Cir. R. 27-3(c)(i)):**

*Counsel for Defendants-Appellants:*

John D. Echeverria (john.echeverria@doj.ca.gov)
Thomas S. Patterson (thomas.patterson@doj.ca.gov)
Mark R. Beckington (mark.beckington@doj.ca.gov)
Jose A. Zelidon-Zepeda (jose.zelidonzepeda@doj.ca.gov)
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3479
Fax:  (415) 703-1234

*Counsel for Plaintiffs-Appellees:*

John W. Dillon (jdillon@dillonlawgp.com)
Dillon Law Group, APC
2647 Gateway Road, Suite 105 No. 255
Carlsbad, CA  92009
(760) 642-7150

George M. Lee (gml@seilerepstein.com)
Seiler Epstein LLP
275 Battery Street, Suite 1600
San Francisco, CA  94111
(415) 979-0500

Erik S. Jaffe (ejaffe@schaerr-jaffe.com)
Schaerr Jaffe LLP
1717 K Street NW, Suite 900
Washington, D.C. 20006
(202) 787-1060

**(2)    Facts Showing the Existence and Nature of the Emergency (9th Cir. R. 27-3(c)(ii)):**

The district court's judgment declares unconstitutional and enjoins the AWCA's restrictions on the manufacture, importation, sale, and possession of rifles, pistols, and shotguns defined as "assault weapons" under California Penal Code section 30515(a). The district court entered its judgment on June 4, 2021, noted that the judgment was "stayed for 30 days during which time the Attorney General may appeal and seek a stay from the Court of Appeals," and directed that the judgment "will take full force and effect" after that time, *i.e.*, on July 4, 2021. Dkt. 115 at 93-94. Defendants request an immediate stay of the judgment from this Court to preserve the status quo during this appeal. The State's experience in *Duncan v. Becerra*, No. 19-55376 (9th Cir.), underscores why emergency relief is warranted here. That case, which is currently pending en banc review by this Court, involves a Second Amendment challenge to California's restrictions on large-capacity ammunition magazines. The same district court entered judgment and permanently enjoined California's longstanding restrictions on large-capacity magazines, effective immediately. *Duncan v. Becerra*, 366 F. Supp. 3d 1131 (S.D. Cal. 2019), *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted*, 988 F.3d

4

1209 (2021). In the short period before the Attorney General was able to obtain a stay of the judgment pending appeal, a substantial number of large-capacity magazines flowed into the State. Echeverria Decl. ¶ 43.

If the district court's judgment in this case goes into effect on July 4, it would similarly and irrevocably alter the status quo, allowing California residents to acquire long-prohibited assault weapons during the appeal—at the same time that the State is defending the challenged provisions of the AWCA in this appeal and in a related appeal pending before this Court, *Rupp v. Becerra*, No. 19-56004 (9th Cir.). That influx of assault weapons would jeopardize public safety. And even if the Court later upholds the challenged provisions of the AWCA, it could be difficult for the State to remove those new assault weapons and restore the status quo.

Defendants respectfully request that the Court act on this motion by June 18, 2021, so that, in the event that a three-judge panel denies any stay, there is time for Defendants to seek further relief from the en banc Court or the Supreme Court in advance of the July 4 effective date set by the district court.

**(3)  Why the Motion Could Not Have Been Filed Earlier (9th Cir. R. 27-3(c)(iii)):**

The district court issued its decision and entered judgment on the afternoon of Friday, June 4, 2021. *See* Dkt. 115, 116. Defendants filed this emergency motion six days later. Counsel for Defendants notified the Ninth Circuit court staff by

telephone and email, on June 8, 2021, and again by email, on June 10, 2021, that defendants would be filing this emergency motion.

**(4)   When and How Counsel Were Notified and Served and Plaintiffs' Position on the Emergency Motion (9th Cir. R. 27-3(c)(iv)):**

On June 8, 2021, undersigned counsel conferred with Plaintiffs' counsel, John Dillon, by telephone to inform Plaintiffs that Defendants were planning to appeal the judgment and seek a stay pending appeal from this Court, consistent with the district court's decision, and to inquire whether Plaintiffs would stipulate to a stay of the judgment pending appeal. Later that day, Mr. Dillon informed undersigned counsel by email that Plaintiffs would not stipulate to a stay pending appeal. This emergency motion was served on June 10, 2021, by electronic mail and overnight mail.

**(5)   The Requested Relief Was First Sought in the District Court (9th Cir. R. 27-3(c)(v)):**

To preserve the status quo and prevent an abrupt influx of assault weapons into the State, Defendants requested that the district court enter a stay pending appeal if it were inclined to enjoin the AWCA in whole or in part. Defendants made that request in their original opposition to Plaintiffs' motion for preliminary injunction. Echeverria Decl. ¶ 15. Defendants repeated this request at the conclusion of the trial. *Id.* ¶ 37, Ex. 10 at 210.

As noted, the district court's June 4 decision granted a temporary 30-day stay to afford Defendants an opportunity to appeal and seek a longer stay from this Court:

> The Attorney General asked for a stay of any injunction pending appeal. . . . Because this case involves serious questions going to the merits, a temporary stay is in the public interest. This declaration and permanent injunction are stayed for 30 days during which time the Attorney General may appeal and seek a stay from the Court of Appeals. After 30 days, the [permanent injunction] will take full force and effect . . . .

Dkt. 115 at 93-94. By rejecting a full stay pending appeal, the district court "failed to afford the relief requested" by Defendants, necessitating this emergency motion. Fed. R. App. P. 8(a)(2)(A)(ii). Moreover, the district court expressly directed Defendants to seek a stay pending appeal from this Court in the event of an appeal, and Defendants' emergency motion is consistent with that instruction. *See also* 9th Cir. Rule 27-2 ("If a district court stays an order or judgment to permit application to the Court of Appeals for a stay pending appeal, an application for such stay shall be filed in the Court of Appeals within 7 days after issuance of the district court's stay."). Returning to the district court to seek a stay pending appeal would be impracticable because it would contravene the district court's express instruction. *See* Fed. R. App. P. 8(a)(2)(A)(i).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 10, 2021                    Respectfully submitted,


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General

s/ John D. Echeverria

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants-Appellants*

8

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................1

Background .........................................................................................................3

    A.    The Assault Weapons Control Act .......................................................3

    B.    The District Court Proceedings ...........................................................5

Argument............................................................................................................7

I.    Defendants Are Likely to Succeed on the Merits...........................................8

II.    The Equitable Factors Weigh Strongly in Favor of a Stay...........................19

Conclusion .......................................................................................................23

Statement of Related Cases..............................................................................24

Certificate of Compliance ...............................................................................25

# TABLE OF AUTHORITIES

**Page**

**C**ASES

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*
910 F.3d 106 (3d Cir. 2018) ................................................................. 16

*Coal. for Econ. Equity v. Wilson*
122 F.3d 718 (9th Cir. 1997) ............................................................... 20

*District of Columbia v. Heller*
554 U.S. 570 (2008) ................................................................... *passim*

*Duncan v. Becerra*
366 F. Supp. 3d 1131 (S.D. Cal. 2019) ............................................... 20

*Friedman v. City of Highland Park*
136 S. Ct. 447 (2015) ............................................................................ 9

*Friedman v. City of Highland Park*
784 F.3d 406 (7th Cir. 2015) ........................................... 9, 11, 17, 19

*FTC v. Qualcomm Inc.*
935 F.3d 752 (9th Cir. 2019) ................................................................. 1

*Fyock v. Sunnyvale*
779 F.3d 991 (9th Cir. 2015) ............................................................... 16

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*
512 F.3d 1112 (9th Cir. 2008) ....................................................... 1, 19

*Heller v. District of Columbia*
670 F.3d 1244 (D.C. Cir. 2011) ....................................................9, 11, 18

*Humane Soc'y of U.S. v. Gutierrez*
558 F.3d 896 (9th Cir. 2009) ................................................................. 7

*Jackson v. City & Cty. of San Francisco*
746 F.3d 953 (9th Cir. 2014) ............................................................... 11

# TABLE OF AUTHORITIES
## (continued)

Page

*Kolbe v. Hogan*
138 S. Ct. 469 (2017)...........................................................9

*Kolbe v. Hogan*
849 F.3d 114 (4th Cir. 2017) .....................................*passim*

*Leiva-Perez v. Holder*
640 F.3d 962 (9th Cir. 2011) ...........................................7, 8, 18

*Maryland v. King*
567 U.S. 1301 (2012)....................................................1, 20

*McDonald v. City of Chicago*
561 U.S. 742 (2010)............................................................2

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
804 F.3d 242 (2d Cir. 2015) ...............................9, 11, 12, 16

*Nken v. Holder*
556 U.S. 418 (2009).............................................................1

*Pena v. Lindley*
898 F.3d 969 (9th Cir. 2018) ..........................................12, 15

*Rhode v. Becerra*
2020 WL 2049091 (9th Cir. Apr. 24, 2020)..........................22

*Rupp v. Becerra*
401 F. Supp. 3d (C.D. Cal. 2019) ..............................9, 12, 13

*Shew v. Malloy*
136 S. Ct. 2486 (2016)........................................................9

*Silveira v. Lockyer*
312 F.3d 1052 (9th Cir. 2002) ..............................................3

*Wilson v. Cook Cty.*
141 S. Ct. 110 (2020)...........................................................9

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*Wilson v. Cook Cty.*
937 F.3d 1028 (7th Cir. 2019) .......................................................9, 11

*Worman v. Healey*
922 F.3d 26 (1st Cir. 2019).......................................................*passim*

*Worman v. Healy*
141 S. Ct. 109 (2020)...........................................................................9

*Young v. Hawaii*
992 F.3d 765 (9th Cir. 2021) ............................................................10

## STATUTES

California Penal Code
§ 30505(a) ...........................................................................................3
§ 30510..............................................................................................3, 6
§ 30510(a) ...........................................................................................3
§ 30515(a) ...............................................................................3, 4, 5, 6
§ 30515(a)(1) ................................................................................4, 13
§ 30515(a)(2) ................................................................................4, 13
§ 30515(a)(3) .......................................................................................4
§ 30515(a)(4) .......................................................................................5
§ 30515(a)(5) .......................................................................................5
§ 30515(a)(6) .......................................................................................5
§ 30515(a)(7) .......................................................................................5
§ 30515(a)(8) .......................................................................................5
§ 30515(b) ...........................................................................................4
§ 30600(a) ...........................................................................................5
§ 30605(a) ...........................................................................................5
§ 30900(b) .........................................................................................12
§ 30945...............................................................................................12

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II.......................................................................*passim*

## TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

Federal Rules of Appellate Procedure
    Rule 43(c)(2) .......................................................................................................1
Federal Rules of Civil Procedure
    Rule 65(a)(2) .......................................................................................................6


**OTHER AUTHORITIES**

Senate Bill 23 (1999 Cal. Stat. ch. 129) ....................................................................1

v

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL**

## INTRODUCTION

This Court should stay the district court's judgment pending appeal to preserve the status quo, prevent irreparable harm to the State and its residents, and protect the public interest while the Court resolves the merits of the appeal. The district court permanently enjoined critical provisions of the California Assault Weapons Control Act (AWCA), a statute that has been in place for more than three decades. Every federal court of appeals to consider a Second Amendment challenge to similar restrictions on assault weapons has upheld those restrictions. *See infra* p. 9. But the district court's judgment—which, absent a stay, will take effect on July 4, 2021—would allow such weapons to enter the State lawfully for the first time in decades.

The purpose of a stay is to "simply suspend[] judicial alteration of the status quo," *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019), "ensuring that appellate courts can responsibly fulfill their role in the judicial process," *Nken v. Holder*, 556 U.S. 418, 427 (2009). Because an injunction barring enforcement or application of a duly enacted statute poses a substantial risk of harming the public interest, this Court and others routinely issue stays pending appeal when a lower court enjoins a statute. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1303 (2012); *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th

1

Cir. 2008); *Rhode v. Becerra*, No. 20-55437 (9th Cir. May 14, 2020) (Dkt. 13-1).

The case for a stay pending appeal here is especially compelling: If the State's

longstanding restrictions on assault weapons are enjoined—even temporarily—

prohibited weapons could flood into the State, undermining public safety and

harming the public interest. That is exactly what happened in 2019 when the same

district court struck down California's restrictions on large-capacity magazines and

briefly did not stay its judgment.

A stay is also warranted because the district court's decision is deeply flawed

and Defendants are likely to succeed on the merits of their appeal. As the Supreme

Court recognized in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "the right

secured by the Second Amendment is not unlimited." It is "not a right to keep and

carry any weapon whatsoever in any manner whatsoever and for whatever

purpose." *Id.* On the contrary, the Supreme Court has made clear that the Second

Amendment right is subject to many reasonable regulations. *See id.* at 626-627 &

n.26; *see also McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality

opinion). As discussed below, the great weight of federal authority establishes that

restrictions on the use and possession of assault weapons, like those enjoined by

the district court below, are among those regulations that are consistent with the

Second Amendment. At a minimum, the Court should maintain the status quo

during the pendency of this appeal, while the State makes its case that this Court

should reach the same conclusion on this important constitutional question as its sister circuits.

## BACKGROUND

### A. The Assault Weapons Control Act

The AWCA initially defined as assault weapons certain semiautomatic rifles, pistols, and shotguns identified by make and model.  *See* Cal. Penal Code § 30510. In enacting the AWCA, the California Legislature found that an assault weapon "has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings."  *Id.* § 30505(a).  The AWCA made it a felony to manufacture, import, sell, or possess any of the listed firearms without a permit.  *Silveira v. Lockyer*, 312 F.3d 1052, 1057 (9th Cir. 2002).  After the Legislature enacted the AWCA, gun manufacturers began to produce "copycat" weapons to evade the statute's restrictions.  *Id.* at 1058 n.5.  In response, the Legislature enacted Senate Bill 23, 1999 Cal. Stat. ch. 129, to add a features-based definition of "assault weapons" to the AWCA, now codified at California Penal Code section 30515(a).  *Silveira*, 312 F.3d at 1058.  That section defines as an "assault weapon" specific types of rifles, pistols, and shotguns that possess certain enumerated features or configurations.  Cal. Penal Code § 30510(a).

3

The features that qualify firearms as "assault weapons" under section 30515(a) involve specific tactical enhancements or configurations that make the weapons more dangerous to the public and law enforcement and more susceptible to criminal use. For example, some of the features enhance accuracy during rapid firing, making it easier for a mass shooter to inflict more casualties. Other features make the prohibited firearms more concealable, allowing mass shooters and other criminals to escape detection for longer periods. *See generally* Dkt. 103 at 4-11; *infra* at p. 13.

Specifically, under section 30515(a), a rifle qualifies as an "assault weapon" if it is: (1) a semiautomatic, centerfire rifle that does not have a "fixed magazine,"[2] but does have either a pistol grip that protrudes conspicuously beneath the action of the rifle, a thumbhole stock, a folding or telescoping stock, a grenade or flare launcher, a flash suppressor, or a forward pistol grip; (2) a semiautomatic, centerfire rifle with a fixed magazine capable of holding more than ten rounds of ammunition; or (3) a semiautomatic, centerfire rifle that has an overall length of less than 30 inches. Cal. Penal Code § 30515(a)(1)-(3).

---

[2] A "fixed magazine" is "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." Cal. Penal Code § 30515(b).

4

A pistol qualifies as an "assault weapon" under section 30515(a) if it is: (1) a semiautomatic pistol that does not have a fixed magazine, but has either a threaded barrel (capable of accepting a flash suppressor, a forward handgrip, or a silencer), a second handgrip, a barrel shroud, or the capacity to accept a detachable magazine outside of the pistol grip; or (2) a semiautomatic pistol with a fixed large-capacity magazine. Cal. Penal Code § 30515(a)(4)-(5).

A shotgun qualifies as an "assault weapon" under section 30515(a) if it is: (1) a semiautomatic shotgun that has an adjustable stock and either a pistol grip that protrudes conspicuously beneath the action of the weapon, a thumbhole stock, or a vertical handgrip; (2) a semiautomatic shotgun that has the ability to accept a detachable magazine; or (3) a shotgun that has a revolving cylinder. Cal. Penal Code § 30515(a)(6)-(8).

For the past two decades, California has restricted the manufacture, distribution, transportation, importation, sale, lending, and possession of firearms that qualify as "assault weapons" under the AWCA. *See* Cal. Penal Code §§ 30600(a), 30605(a).

### B. The District Court Proceedings

Plaintiffs' operative complaint advances a Second Amendment challenge to all of the definitions of "assault weapon" in California Penal Code section 30515(a), as well as a range of California statutes and regulations relating to

5

assault weapons.  Dkt. 9 at 41-42.[3]  Plaintiffs challenged these provisions on their face and as applied to them and similarly situated individuals.  *Id.*

On December 6, 2019, Plaintiffs filed a motion for a preliminary injunction. Dkt. 22.  On January 23, 2020, Defendants opposed that motion.  Dkt. 33.  To preserve the status quo, Defendants included in their opposition a request for an immediate stay of any preliminary injunction entered by the district court.

The district court held evidentiary hearings on the preliminary injunction in October 2020, after which it set a trial to commence approximately three months later.  The court consolidated the trial on the merits with the hearing on Plaintiffs' preliminary injunction motion under Federal Rule of Civil Procedure 65(a)(2).  *See* Echeverria Decl. ¶ 20.  The parties engaged in expedited discovery and pretrial proceedings during the following months.  *See id.* ¶¶ 22-28.  The trial was held in February 2021.  At the conclusion of the trial, Defendants again requested a stay pending appeal in the event that the court enjoined any portion of the AWCA.  *Id.* ¶ 37, Ex. 10.

On June 4, 2021, the district court issued a decision concluding that the challenged provisions of the AWCA violate the Second Amendment and enjoining their enforcement.  Dkt. 115.  The court principally reasoned that the challenged

---

[3] Plaintiffs do not challenge the make-and-model definition of an assault weapon. Cal. Penal Code § 30510.

restrictions are unconstitutional under "the Ninth Circuit's two-step levels-of-scrutiny test." *Id.* at 12; *see id.* at 12-92. At step one, the court held that the AWCA burdens conduct protected by the Second Amendment. *Id.* at 18-20. At step two, it reasoned that the challenged provisions are unconstitutional under any level of scrutiny. *Id.* at 22, 90-92. The district court issued a temporary 30-day stay to allow Defendants to "appeal and seek a stay from the Court of Appeals." *Id.* at 94. At the end of that period, if Defendants have not secured a stay pending appeal, the district court's permanent injunction of the challenged provisions of the AWCA "will take full force and effect." *Id.* The district court entered a final judgment on the same day. Dkt. 116 (June 4, 2021).

## ARGUMENT

A movant seeking a stay pending appeal "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009) (citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). To obtain a stay, Defendants "need not demonstrate that it is more likely than not that they will win on the merits" or that "ultimate success is probable." *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011). Rather, a "substantial case on the merits"

or "serious legal questions" will suffice "so long as the other factors support the stay." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)).

Defendants readily satisfy the standard for a stay pending appeal. Every federal court of appeals to consider a Second Amendment challenge to similar restrictions on assault weapons has upheld the restrictions. The record developed below confirms that the same result is appropriate here, establishing a likelihood of success on the merits. And the district court did not identify any persuasive reason for departing from that broad judicial consensus. At an absolute minimum, this case raises serious and substantial legal questions justifying a stay. Moreover, the equitable factors weigh heavily in favor of a stay pending appeal. The challenged restrictions protect the safety of the public and of law enforcement officers and they have been in place for decades. Absent a stay, the district court's judgment will take effect on July 4, and the very weapons that California has deemed too dangerous to allow would flood into the State—at the same time this Court is weighing whether the Constitution authorizes the State to prohibit them.

## I. DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS

Defendants are likely to succeed on the merits of their appeal. Other courts of appeals have unanimously rejected Second Amendment challenges to assault-weapon restrictions similar to the AWCA. Those decisions are correct as a matter of law, and the same reasoning applies under the circumstances of this case.

8

Indeed, in granting a 30-day stay, the district court acknowledged that "this case involves serious questions going to the merits," Dkt. 115 at 93; under this Court's standards, and in light of the powerful equitable considerations surrounding this case, the conceded presence of serious legal questions is sufficient to justify a stay pending appeal.

    1.  All five federal courts of appeals to consider a Second Amendment challenge to an assault weapons ban similar to the AWCA have upheld the challenged restriction. *See Wilson v. Cook Cty.*, 937 F.3d 1028, 1036 (7th Cir. 2019) (following *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406, 412 (7th Cir. 2015)); *Worman v. Healey*, 922 F.3d 26, 38-41 (1st Cir. 2019); *Kolbe v. Hogan*, 849 F.3d 114, 138-146 (4th Cir. 2017) (en banc); *N.Y. State Rifle & Pistol Ass'n v. Cuomo* (*NYSRPA*), 804 F.3d 242, 260-263 (2d Cir. 2015); *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1261-1264 (D.C. Cir. 2011). The Supreme Court has repeatedly declined to review those decisions. *See Wilson v. Cook Cty.*, 141 S. Ct. 110 (2020); *Worman v. Healy*, 141 S. Ct. 109 (2020); *Kolbe v. Hogan*, 138 S. Ct. 469 (2017); *Shew v. Malloy*, 136 S. Ct. 2486 (2016); *Friedman v. City of Highland Park*, 136 S. Ct. 447 (2015). And a district court in this Circuit recently upheld the same provisions challenged in this case on a record similar to the one presented here. *Rupp v. Becerra*, 401 F. Supp. 3d at 988, 993 (C.D. Cal. 2019), *appeal docketed*, No. 19-56004 (9th Cir. Aug. 28, 2019). That

consistent body of decisions alone demonstrates that Defendants are likely to succeed on the merits (or, at the very least, that this case presents substantial and serious questions).

2. While this is not the place for an exhaustive discussion of the merits, settled precedent and the record below establish that the challenged provisions of the AWCA are consistent with the Second Amendment. Since *Heller*, this Court and others have applied a "two-step framework" to Second Amendment claims. *E.g.*, *Young v. Hawaii*, 992 F.3d 765, 783 (9th Cir. 2021) (en banc). Under the first step, courts consider whether the law at issue "affects conduct that is protected by the Second Amendment," principally by looking for "persuasive historical evidence that the regulation does not impinge on the Second Amendment right as it was historically understood" or that it "falls within [certain] presumptively lawful regulatory measures . . . identified" by the Supreme Court in *Heller*. *Id.* at 783. Restrictions of that sort may be upheld "without further analysis." *Id.* If the regulation burdens conduct protected by the Second Amendment, however, courts "move to the second step of the analysis and determine the appropriate level of scrutiny" by evaluating how severely the law burdens the core right to self-defense in the home. *Id.* at 784. Laws that "destr[oy]" that core Second Amendment right are unconstitutional under any level of scrutiny. *Id.* Laws that "severely burden[]"

10

it are reviewed under strict scrutiny. *Id.* And laws that affect Second Amendment rights in "some lesser way" are subject to intermediate scrutiny. *Id.*

Each of the five courts of appeals decisions discussed above analyzed challenges to similar assault-weapon bans at step two under intermediate scrutiny, concluding that such prohibitions place (at most) "only a modest burden" on "the core Second Amendment right to self-defense in the home." *Worman*, 922 F.3d at 38; *see also Wilson*, 937 F.3d at 1036; *Kolbe*, 849 F.3d at 138-146; *NYSRPA*, 804 F.3d at 260-263; *Heller II*, 670 F.3d at 1261-1264.[4] Any burden that the AWCA imposes on core Second Amendment rights is likewise modest: Like the statutes considered by the other federal circuits, the AWCA does "not prohibit possession of 'the quintessential self-defense weapon,'" the handgun; it does not "prevent a person from keeping a suitable and commonly used weapon for protection in the home"; and it restricts only arms not "well-suited to or preferred for the purpose of self-defense." *Heller II*, 670 F.3d at 1262. The statute thus "leave[s] open" ample "alternative channels for self-defense." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 961, 968 (9th Cir. 2014). "[C]itizens may continue to arm themselves with non-semiautomatic weapons or with any semiautomatic gun that

---

[4] The Seventh Circuit did not expressly apply "intermediate scrutiny" in *Friedman* and *Wilson*, but it applied a test closely approximating that standard. *See Wilson*, 937 F.3d at 1034, 1036-1037; *Friedman*, 784 F.3d at 410-412.

does not contain any of the enumerated military-style features." *NYSRPA*, 804 F.3d at 260; *see also Rupp*, 401 F. Supp. 3d at 989 (describing the many other types of weapons that individuals may lawfully possess under California law); Cal. Penal Code §§ 30900(b), 30945 (anyone who lawfully possessed a weapon before it was defined as an "assault weapon" under the AWCA may continue to possess it if the owner timely registered the firearm with the State).[5]

Also like the assault-weapon restrictions considered by the other circuits, the AWCA satisfies intermediate scrutiny: it promotes an "important government objective" and there is a "'reasonable fit' between the challenged law and the asserted objective." *Pena v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018). There can be no doubt that the State has a compelling interest in promoting public safety and reducing gun violence and mass shootings. *See, e.g.*, *Worman*, 922 F.3d at 39 ("few interests are more central"). The AWCA furthers those interests by barring high-powered, dangerous weapons—including, in particular, semiautomatic weapons with "centerfire" capability, *supra* p. 4—if those weapons possess features "serv[ing] specific, combat-functional ends" that enhance their lethality.

---

[5] The AWCA could also be sustained at step one of this Court's Second Amendment framework on the ground that assault weapons are "most useful in military service." *Kolbe*, 849 at 135; *see also* Dkt. 103 at 22-27.

*Kolbe*, 849 F.3d at 137; *see also Rupp*, 401 F. Supp. 3d at 992.[6]  For example,

pistol grips and forward pistol grips allow a shooter to maintain greater control and

accuracy during rapid firing—specifically, they can help counteract muzzle rise

during repeated firing, or help a shooter stabilize a weapon during repeated

semiautomatic fire.[7]  The "main advantage" of a folding or telescoping stock,

another prohibited feature under the AWCA, is "portability" for certain "military

purposes"; it is not "normally found on the traditional sporting rifle."[8]  And a flash

suppressor allows a shooter to maintain accurate, rapid fire in low-light conditions

and can help conceal the shooter's position, especially at night.[9]  Other features

prohibited by the AWCA pose similar dangers.[10]

---

[6] The capability of firing centerfire ammunition is a threshold requirement for a rifle to qualify as an assault weapon.  Cal. Penal Code § 30515(a)(1).  Centerfire ammunition is generally more powerful than rimfire ammunition, and when fired from an assault rifle, will typically defeat normal body armor used by law enforcement.  Echeverria Decl., Ex. 6 (Graham Decl.) ¶ 22.

[7] Dkt. 103 ¶ 45-47; Echeverria Decl., Ex. 6 (Graham Decl.) ¶¶ 28-30, 38; *id.*, Ex. 8 (ATF Report) at 6 ("[Pistol] grips were designed to assist in controlling machineguns during automatic fire.").

[8] Echeverria Decl., Ex. 8 (ATF Report) at 6.

[9] Echeverria Decl., Ex. 8 (ATF Report) at 7.

[10] *See, e.g.*, Penal Code § 30515(a)(2) (fixed magazine with the capacity to accept more than 10 rounds); Echeverria Decl., Ex. 6 (Graham Decl.) ¶¶ 43, 59 (semiautomatic centerfire rifles with lengths less than 30 inches), ¶ 53 (threaded barrel).

Assault weapons are also used disproportionately in crime relative to their market presence. Echeverria Decl., Ex. 7 (Klarevas Decl.) ¶ 16. The record shows, among other things, that assault weapons and other high-capacity semiautomatic weapons account for 22 to 36 percent of guns used in crimes. Echeverria Decl., Ex. 9 (Koper et al. 2017) at 7. Assault weapons, in particular, are disproportionately used in mass murders. *Id.*, Ex. 7 (Klarevas Decl.) ¶ 16.[11] And the use of weapons regulated by the AWCA—particularly assault rifles— increases the numbers of deaths and injuries in public mass shootings on average when compared to the use of other weapons. *See* Echeverria Decl., Ex. 3 (Allen Decl.) ¶¶ 30-35; *id.*, Ex. 7 (Klarevas Decl.) ¶ 17 & tbl. 2.[12] The record here is more than sufficient to establish that the AWCA's ban on assault weapons "promotes a 'substantial government interest that would be achieved less effectively absent the regulation.'" *Pena*, 898 F.3d at 979.

---

[11] The record below also shows that assault rifles pose particular dangers to law enforcement officers. *See supra* n.6. And 13 to 16 percent of guns used in the murders of police are assault weapons. Echeverria Decl., Ex. 9 (Koper et al. 2017) at 7.

[12] Assault weapons also inflict more numerous and more extensive injuries in gunshot victims than wounds from handguns. According to the surgeon who treated victims of two of the Nation's deadliest mass shootings—Columbine and Aurora, Colorado—"[g]unshot wounds from assault weapons, such as AR-15 platform rifles and Intra TEC-9 pistols, tend to be higher in complexity with higher complication rates than such injuries from non-assault weapons, increasing the likelihood of morbidity in patients that present injuries from assault weapons." Echeverria Decl., Ex. 4 (Colwell Decl.) ¶ 8.

14

3. In holding otherwise, the district court committed numerous errors of both fact and law. For example, the court asserted without any citation or evidence that "[m]ore people have died from the Covid-19 vaccine than mass shootings in California." Dkt. 115 at 47. But the approved COVID-19 vaccines are exceptionally "safe and effective"; a "review of available clinical information, including death certificates, autopsy, and medical records has not established a causal link" between any deaths in the United States and "COVID-19 vaccines."[13] By contrast, dozens have lost their lives in mass shootings in California, and more than 500 people have died across the Nation in just the past 10 years. Echeveria Decl., Ex. 3 (Allen Decl.), App. B. The district court also compared the AR-15 rifle to "the Swiss Army Knife." Dkt. 115 at 1. Knives, of course, bear none of the deadly features that may subject an AR-15 or other semiautomatic firearms to prohibition under the AWCA. *See supra* p. 13.

The district court's legal analysis was also flawed. The court concluded that the AWCA "impose[s] the severest" kind of burden on Second Amendment rights because it "complete[ly] ban[s]" a class of weapons, Dkt. 115 at 21-22—a class

---

[13] Ctrs. for Disease Control & Prevention, *Selected Adverse Events Reported after COVID-19 Vaccination*, https://bit.ly/3cyfHdW (last visited June 9, 2021); *see id.* (noting "recent reports indicat[ing] a plausible causal relationship between the J&J/Janssen COVID-19 Vaccine and a rare and serious adverse event—blood clots with low platelets").

that, the court emphasized, is "immensely popular" in other States that allow for the sale and possession of assault weapons, *id.* at 13; *see id.* at 12-17, 80. But the AWCA does not prohibit all "modern rifles," *id.* at 15, or even all "AR-15[s]," *id.* at 1. Under California law, law-abiding adults may purchase and possess "featureless AR-15[s]" and other semiautomatic weapons that do not qualify as assault weapons under the AWCA's definition. *Id.* at 41; *see id.* at 42 (describing a "'featureless' California-legal variety of AR-15 rifle"). If the court instead meant that the AWCA prohibits "an entire class of very popular hardware" because it bars the specific weapons that qualify as "assault weapons" under the statute's definition, *id.* at 17, that kind of reasoning is "circular"—it would mean that "whatever group of weapons a regulation prohibits may be deemed a 'class,'" automatically subjecting the regulation to strict scrutiny. *Worman*, 922 F.3d at 32 n.2.[14] As other courts of appeals have recognized, moreover, it is "illogical" to treat weapons as immune from government restriction merely because they are owned by a large number of people. *Worman*, 922 F.3d at 35 n.5. Gun manufacturers "would need only [to] flood[] . . . the market" with such weapons

---

[14] *See also Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey* , 910 F.3d 106, 117 (3d Cir. 2018) (New Jersey LCM law does not "categorically ban a class of firearms"); *NYSPRA*, 804 F.3d at 260 (similar); *Fyock v. Sunnyvale*, 779 F.3d 991, 999 (9th Cir. 2015) (similar).

16

"prior to any governmental prohibition in order to ensure [those weapons] constitutional protection." *Kolbe*, 849 F.3d at 141.

The district court also reasoned that, even if the AWCA does not impose a severe burden on Second Amendment rights, it would "fail[] intermediate scrutiny because it lacks a reasonable fit." Dkt. 115 at 90; *see id.* at 90-92. The court did not question, however, whether the AWCA furthers the State's interest in prohibiting "arms that have been proven to be the most lethal in mass shooting situations"—that is, firearms "allow[ing] someone to fire, not just 30 or 40 rounds, but to fire those rounds rapidly and maintain accuracy in rapid-fire scenarios." *Id.* at 39-40 (internal quotation marks omitted). To the contrary, the court *agreed with* the State that the features prohibited under the AWCA allow for "more accurate shooting" during rapid-fire situations. *Id.* at 36-37 n.47; *see also id.* at 35-39, 40-41. The court instead suggested that California's interest is insubstantial or illegitimate because "[a]ccuracy is very important for self-defense." *Id.* at 40; *see also id.* at 35, 41. As other circuits have recognized, however, the "exceptionally lethal weapons of war" prohibited by assault-weapon bans are unnecessary for effective self-defense. *Kolbe*, 849 F.3d at 124; *see also Friedman*, 784 F.3d at 411

17

(similar); *Heller II*, 640 F.3d at 1262 (similar). Plaintiffs provided, and the district court cited, no evidence to the contrary.[15]

Finally, the district court concluded that the AWCA "burdens substantially more protected activity than is necessary to further the state's goals." Dkt. 115 at 90. In the court's view, a valid version of the AWCA would "include a broad exception for home defense" for law-abiding individuals, as well as "an exception for maintaining an AR-15 type rifle for militia readiness." *Id.* Such "broad exceptions," however, would substantially diminish—indeed, largely defeat—the AWCA's effectiveness. Mass shooters are often law-abiding right up until the moment when they commit their crimes. *See, e.g.*, Echeverria Decl., Ex. 3 (Allen Decl.) ¶ 38 (finding that shooters in 77 percent of mass shootings obtained their firearms legally and 79 percent of the firearms used in mass shootings were obtained legally). And, contrary to the district court's assertion, there is no basis for concluding that the AWCA is a "failed experiment" which has "made no

---

[15] The district court also suggested that California lacks a legitimate interest in prohibiting assault weapons because they are "the ideal arm for militia use." Dkt. 115 at 80; *see id.* at 80-89. According to the court, assault weapons are entitled to heightened Second Amendment protections because they "can . . . be useful for war." *Id.* at 81-82. But the Supreme Court said the opposite in *Heller*, observing that "weapons that are most useful in military service—M-16 rifles and the like—may be banned." 554 U.S. at 627. The district court's contrary reasoning does not appear to have any logical stopping point; it would seem to allow private individuals to possess a range of military-grade weapons that have long been off limits to civilians.

difference" in limiting deaths from mass shooting atrocities.  Dkt. 115 at 90.  Like

assault-weapon bans that have been upheld elsewhere, the AWCA has plainly

helped to "reduce the carnage if a mass shooting occurs," by making it more

difficult for shooters to obtain types of firearms that "fire more shots, faster," with

deadlier aim.  *Friedman*, 784 F.3d at 411; *see supra* p. 13.[16]

## II.  THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

The remaining equitable factors all tilt sharply in favor of a stay.  As a general

matter, the "public interest" is harmed where, as here, a lower court invalidates and

enjoins a duly enacted statute.  *See, e.g.*, *Golden Gate Rest. Ass'n*, 512 F.3d at

1126 (recognizing that the "public interest may be declared in the form of a

statute"); *see also* Dkt. 115 at 93 (acknowledging that "a temporary stay is in the

public interest").  And as this Court has often recognized, a State necessarily

---

[16] In suggesting that the AWCA has made "no difference at all" in "preventing mass shootings," Dkt. 115 at 90; *see id.* at 60 (same), the district court misunderstood the State's justification for the AWCA.  No statute can prevent all mass shootings.  As the court acknowledged elsewhere in its opinion, the State's objective is not just to deter mass shootings, but also to prohibit weapons that make mass shootings especially lethal when they do occur.  *See id.* at 39-40.  That objective is "not only substantial, but compelling."  *Kolbe*, 849 F.3d at 139.  And contrary to the district court's suggestion, the record provides ample support for the State's determination that assault-weapon restrictions are effective in promoting public safety.  *See* Dkt. 103 at 12-13; *see, e.g.*, Echeverria Decl., Ex. 5 (Donohue Decl.) ¶ 63 (study comparing data during the ten-year period of the federal ban with preceding ten-year period showing that the number mass shootings dropped by 37 percent (from 19 to 12) and the number of fatalities dropped by 43 percent (from 155 to 89)).

"suffers irreparable injury whenever an enactment of its people or representatives is enjoined." *E.g.*, *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also King*, 567 U.S. at 1303 (same).

Here, there is an especially grave threat of irreparable harm. As explained by Blake Graham, Assistant Director of the State's Bureau of Firearms, an injunction against enforcement of the AWCA during the pendency of this appeal would likely cause significant disruption to law enforcement with the predictable inflow of assault weapons into the State for the first time in decades. *See* Echeverria Decl., Ex. 6 (Graham Decl.) ¶¶ 72-77. If this Court ultimately agreed with the other federal courts of appeals on the legal issues in this appeal and reversed the injunction, California would be left with a glut of illegal assault weapons that threaten the safety of the public and of law enforcement officers. *See id.*

This is not a hypothetical concern. In March 2019, the district court's decision in *Duncan v. Becerra* resulted in a substantial number of large-capacity magazines entering the State in the one-week period between the entry of judgment and the district court's issuance of a stay. *See* Echeverria Decl. ¶ 43; *id.*, Ex. 11 ("[H]igh-capacity ammunition magazines flooded into California during a one-week window created when a federal judge temporarily threw out the state's ban, gun owners' groups estimated Thursday."). An immediate stay is necessary to prevent a similar disruption of the status quo in this case. If the AWCA is

20

enjoined, state residents may immediately begin purchasing prohibited assault weapons—and based on the experience in *Duncan*, they could do so in large numbers. If the district court's decision is later reversed on appeal, it would be difficult to rid the State of all such weapons.

At the same time, any harm to plaintiffs from a stay would be comparatively minor. As explained above, the plaintiffs here—like other law-abiding California adults—may lawfully purchase a wide array of firearms for self-defense and other purposes, including non-prohibited semi-automatic weapons. *Supra* pp. 11-12. And this Court is already poised to address some of the principal legal issues in this appeal: the parties in *Rupp v. Becerra*, No. 19-56004, have already filed briefs and presented oral argument on the question whether the AWCA is valid under the Second Amendment. *See* Echeverria Decl. ¶ 10. Any inconvenience caused by delaying access to assault weapons during the time it takes this Court to resolve these issues will be minor in relation to the harm posed to the State by allowing such arms to flood the State for the first time in decades.

Indeed, the district court acknowledged not only that "this case involves serious questions going to the merits," but also that "a temporary stay is in the public interest." Dkt. 115 at 93. The district court did not explain why a stay of longer than "30 days" would not also be in the public interest, preferring to let this Court decide whether to grant a full stay pending appeal. *Id.* Because the district

21

court's stay will expire on July 4, if this Court is not able to act on the pending motion before July 4, it should enter an "immediate administrative stay" while considering the motion. *E.g.*, *Rhode v. Becerra*, 2020 WL 2049091, at *1 (9th Cir. Apr. 24, 2020). And if a three-judge panel of the Court ultimately denies the motion, it should extend the administrative stay during the period required for the en banc Court and (if necessary) the Supreme Court to consider whether a stay pending appeal is warranted. There is no basis for allowing a sudden influx of prohibited assault weapons into the State for any period of time before this Court has resolved the important questions at issue in this appeal.

## CONCLUSION

The Court should grant a stay of the district court's final judgment pending resolution of this appeal. If the Court is not able to rule on this motion before July 4, Defendants respectfully request that it grant an administrative stay to preserve the status quo while the Court considers the motion. In the event that a three-judge panel denies this motion, Defendants respectfully request that the panel grant an administrative stay to preserve the status quo until such time as Defendants have had an opportunity to seek further relief from the en banc Court or the Supreme Court.

Dated: June 10, 2021                    Respectfully submitted,


                                        ROB BONTA
                                        Attorney General of California
                                        THOMAS S. PATTERSON
                                        Senior Assistant Attorney General
                                        MARK R. BECKINGTON
                                        Supervising Deputy Attorney General
                                        JOSE A. ZELIDON-ZEPEDA
                                        Deputy Attorney General

                                        s/ John D. Echeverria

                                        JOHN D. ECHEVERRIA
                                        Deputy Attorney General
                                        *Attorneys for Defendants-Appellants*

## STATEMENT OF RELATED CASES

The following related cases are pending before this Court: *Duncan et al. v. Becerra*, No. 19-55376 (9th Cir. Apr. 4, 2019); *Rupp v. Becerra*, No. 19-56004 (9th Cir. Aug. 28, 2019).

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3 because it contains 5,482 words. This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: June 10, 2021               s/ John D. Echeverria